Good morning. May it please the Court. My name is Sokol Lakidi, and I'm here to represent the appellant, Stephen McGonigle. Please be advised I would like to reserve five minutes for my rebuttal. Just watch the clock. Thank you. Understood, Your Honor. This case presents critical issues regarding the improper application of third-party funds towards restitution, the procedural and substantive reasonableness of his sentence, and lastly, the constitutionality of 18 U.S.C. 1028A. I'll address each issue in turn, focusing on legal errors that demand reversal. Regarding the first issue, improper application of third-party funds towards restitution, Your Honor, here the District Court abuses discretion when applying the entirety of Mr. It is undisputed that the funds were owned by Mr. McGonigle, his wife, Janelle Smith, and his friend, Julie Tolbert. Under 28 U.S.C. But he represented otherwise, and his wife signed it, when he signed the bond. And the District Court's findings were you sold it for $1.2 million. That's $400,000 apiece. This is only $300,000. So no problem. The other co-owners of the property have got their money, and this is his share. So what's wrong with those findings? Don't we have to find that those findings are clearly erroneous? Yes, Your Honor. My understanding is that, one, when Mr. McGonigle signed the affidavit, it was without a counsel present. Two, that the Yeah, but this is his house, and it was his wife's house, and she signs it. The fact that they didn't have counsel present, I mean, you've got to be able to know what the value of your house is and whether you've got a full share in it or not. As you articulated, Your Honor, his wife also signed for the house and the surety bond. The court did not allow counsel to make an argument or issue a finding of fact regarding whose money this was. Because of, for those reasons, and the lack of clarification of the ownership of the funds, and summarily relying on the affidavit, we submit that they failed to resolve the factual dispute in line with United States v. Andrews. There's some rejection of meaningful opportunity to determine ownership was reversible error. Your Honor, now I would like to discuss the second issue, procedural and substantive unreasonableness of the sentence, unless, Your Honor, Judge Bybee, you have further questions regarding Thank you. Now, in regards to the procedural and substantive unreasonableness, there are three grounds here we submit. One, the district court committed procedural error in calculating the loss amount. Two, the court erred in applying the four-level aggravating rule. And lastly, the sentence was substantively unreasonable. Now, in regards to the first issue, the first sub-issue, committed procedural error in calculating the loss amount, here the court applied a 20-level enhancement under 2B1.1B1K. Now, the actual loss in the case was significantly lower. Your Honor, we submit that it was warranting a 14-level enhancement as opposed to the 21-level enhancement. Now, the government attempted to justify the loss amount by retroactively applying the 827 amendment to 2B1.1. Now, that retroactive application is unconstitutional, Your Honor. The amendment which clarifies the intended loss can be included in the calculation, did not take effect until November 1st, 2024, seven months after McGonigal's sentencing. So, let's suppose that, I'm still trying to figure out what the government should have charged with. Let's suppose that he went to the IRS, filed all of these fraudulent things all across the country, and didn't get a penny. The IRS somehow sort of linked him to all of these things and said, holy Toledo, there's a fraud, an attempted fraud here going on on a massive scale. What should the government have charged your client with? Could they have charged him under this statute, or they have to charge him with something else, such as attempt? Attempted fraud. Are you asking if the government should have charged him under wire fraud and conspiracy to defraud? Well, I'm wondering whether there's a difference, whether we have to take into account here that the loss that the government, that the district court found of 9.5 plus million includes the loss that he tried, that he attempted, the money he attempted to get out of the IRS, but did so unsuccessfully. He successfully defrauded them of 1.2 million. But the government said, and the district court adopted and said, yeah, we're going to take the higher amount because you filed thousands of these claims, fraudulent claims, all across the country. You defrauded all kinds of people. And so do we get to take into account what he tried to do? And if the government had interdicted this before he got a single penny out of any source of revenue, either state or federal, does that mean that there's no loss? Your Honor, the question appears to me, I understood your question to say, if the government was correct in applying the intended loss, Your Honor? Well, the district court adopts a 9.5. Yes. Okay. And that includes all of the, that includes the amounts of all of the fraudulent Actually intended, yes. Files that he filed with the IRS and with state internal revenue as well. The only reason that he didn't collect 9.5 is because they figured out that he was engaged in this fraud. So how would the, if the government had interdicted him, if they stopped him before he collected a single penny, what should they have charged him with? Could they have charged him under this statute? Or does his loss become zero because he didn't collect anything? That's a great question, Your Honor. Now, unfortunately, that is not the issue presented before us. Well, it may be, it may be, because it goes to whether or not the intended loss can, in this context, be taken as the appropriate measure. I mean, if we accept the proposition that, I mean, you haven't responded to whether it have to be charged under a different statute. If we would accept the proposition that what he was charged with could cover that as a larger figure, the nine point whatever it was, can properly be counted. Your Honors, now, if the government had charged him with attempted conspiracy to defraud the government or attempted wire fraud, and then had also charged him with the conspiracy itself and the subsequent wire fraud, they could have pursued that at trial, and of course, it could have merged. Same conspiracy. I mean, don't charge, I mean, he did somewhat succeed. It's not like there was no criminal misconduct accomplished at all. Why isn't that encompassed by a conspiracy charge, just because you didn't succeed in all aspects of your conspiracy? Well, I'm truly arguing in terms of how the intended loss application in the retroactive amendment was applied, Your Honors. Now, if this case was before a court today, we all know that actual intended loss are both applied. There is no question about it whatsoever. However, at the time that this case was heard, that was not the case. Well, there was some uncertainty. Looking at it from today, we understand that it wasn't clear at the time because the application note hadn't been converted yet. But particularly given the sentence that was imposed here, the calculations made by the district court, the district court statement that it was going to be the same either way, recognizing the uncertainty, at least in his mind, as to what the law was, and that the sentence imposed wasn't above the guideline under either calculation. Indeed, it was substantially below the guideline based on the 9 million calculation. I'm having trouble figuring out how in the end it made any difference. Well, Your Honor, in terms of how it made any difference, we do submit that there were numerous issues that cumulatively together highlight the procedural and substantive unreasonableness. My argument is not based purely on this calculating of loss. However, the application of that retroactive amendment or the retroactive application of the amendment would definitely violate the ex post facto clause, Your Honor. So we accept that. But my question is, at the time that he entered the sentence, he enters the sentence, he says this calculation apparently in his mind is sufficiently uncertain, he calculates it either way, and says he'd give the same sentence either way, and the sentence isn't higher. I mean, we've got cases where you can fairly say, well, but the sentence turned out to be higher than the guideline range, and we want to make sure the sentence is with the guideline range in mind. But in this case, it's markedly lower than the guideline range, what was, I had it written down someplace, but was way lower than the guideline range with the 9 million calculation. And I think it was within the range for the lower calculation. So what reason would he have to think that your client was prejudiced, that the sentence wouldn't have turned out to be exactly the same if the judge had accepted the argument that the lower amount was the appropriate amount to use? Well, like I said, my issues here, as we present in our brief, are cumulative in terms of procedural substantive unreasonableness. Discussing that sentence, I would submit that although your argument is that the ranges weren't the only thing taken into account, the overall census of 120 months, when compared with the co-defendants, clearly also supports that was substantially unreasonable. Well, this is a guy trying to get away with $9 million. Somehow it doesn't seem quite so unreasonable if you look at the context of what the intended loss or what his aim was, even if at a time that actual loss should have been the measure. And he did get away with, what, $1.2 million? So I'm not sure what's so substantially unreasonable. Well, Your Honor, first and foremost, Mr. Waldrop, who is clearly involved, even by his own admission, only received a year and a day, as opposed to the 120 months our client received, Your Honor. I think by your own admission that rather than... I haven't admitted anything, but... No, sorry. But by your own statement regarding the $9.1 million, if that was the leading factor in determining this entire sentence, Mr. Waldrop's sentence would have reflected similarly. I do submit that Mr. Waldrop's sentence was 10 percent of Mr. McGonigal's, but Mr. Waldrop is the defendant here whose behavior was articulated and found by a majority of the witnesses in this case. If I could ask just a slight variant of Judge Bybee's question. Supposer is defendant A, and he has this tax return scheme and files thousands of returns to get $9 million. But someone's tipped off. Someone tips off the law enforcement. He only succeeds in getting $90,000 from the government. Then suppose there's defendant B, who perpetrates the exact same scheme, but only submits one fraudulent tax return and gets $90,000. I mean, isn't defendant A more culpable than defendant B? Even though the actual loss is the same, $90,000 on both, but his intended try to get $9 million. Wouldn't defendant A be more culpable and should be subject to a higher sentence? Well, my personal opinion clearly differs from the guidelines because I still have issues with the actual versus intended loss. I would submit no. They're both $90,000. Let's look at the actual harm that was suffered, and they're both being held accountable for that, and they're both caught by perpetrators before further harm was suffered. So I would submit neither one is more culpable than the other, Your Honor. Does the fact that this was charged as a conspiracy change that theory at all? It's an inchoate climb. And so why don't we get to look at the whole scheme rather than just the actual money they collected? Well, Your Honor, in terms of looking at the whole scheme, two or more people in furtherance of a criminal event, the whole scheme was looked at and considered. I'm not truly understanding your question as relates to how that separates with the amount received in terms of the conspiracy. If the goal of the conspiracy was to obtain money, and they obtained $90,000 as opposed to $1.2 for trying to stand the example, the conspiracy still occurred. I'm kind of confused what your question is. I understand that an attempt would merge, but yeah, I'm still hung up a little bit over the question of, you know, how much you've attempted and what happens if the government, you know, we have a number of cases in which you have, for example, a sting, and the government stops it before money actually changes hands. We have to have some way of sort of valuing what this was, right? Well, if they were charged with attempt, then I would say the intended loss, it would make sense to look at the intended loss. That's why I started off by asking what happens, you know, should they have charged this as an attempt, and how would that have changed things? Fair. Yes, Your Honor. Back to that first question. If there was an attempt, they would have to look at intended loss because there was no actual loss, because if there was actual loss, it would have gone past attempt. So let me take you in a slightly different direction. I think it's one that maybe Judge Clifton asked about, and that is that Judge Selna, I mean, we've got the problem with between that we've got some conflicts in the circuits over intended versus actual loss, and now we have a change in the guidelines, so the whole question is sort of moot except for these last trailing cases. But Judge Selna says it doesn't matter whether I calculated this as 1.9 or 9.5, I've taken into account, I've given you a pretty good variance, I've varied down, and my sentence would be the same under either one. So what's the problem? Your Honor, I would say there is a cumulative of factors for the unreasonable sentence. The loss is not the only issue that we've submitted to this Court. I understand that the loss is the one that we spent the most time discussing. However, I believe that when compared with the other defendant's sentences, as well as the low-risk recidivism and his limited role in the scheme, under the parsimony principle, the Court should vacate the sentence for a man for resentencing. Now, if I may, I only have five minutes remaining, and I would like to discuss what I'm sure we're all really here for today, the 1028A case. Would you like me to continue with 1028A or stick with our present issue? And if you think you've got something there that tells us that this guy was not using somebody else's ID, I'd be really, really interested to hear it. Because I've seen the record, and the record is pretty damning. Your Honor, while I understand that this is an academic standpoint, in this case, the IDs were ancillary, Your Honor. The tax returns filed here, where I would submit the wire fraud, is that predicate offense, Your Honor. Now, if they had submitted tax returns for themselves with inflated numbers, the conspiracy and the wire fraud could have still been charged, Your Honor. But they didn't do that. They used other people's names. Yes, Your Honor. It's hard to escape the conclusion that the use of other people's names didn't have something to do with the scheme. Yes, Your Honor. However, we are focused in our arguments on the vagueness of the statute, vague on its face and vague as applied. Now, in terms of vague on its face, the vagueness is evidence, especially in this case. If we're going to look at Dubbin and his concurrence, Gorsuch— Justice Gorsuch expressed concern about vagueness, but his colleagues didn't sign on to that. Why should we? Because Justice Gorsuch had a great point, Your Honor, that this court should sign on to in order to have it reconsidered, Your Honor. The rest of his colleagues signed on to it. Who are we supposed to follow? Well, Your Honor, unfortunately, that is not the job duty before me. I do commend you for the insurmountable hurdle that is before you, and I am very privileged to watch you guys decide that issue. Now— We're honored. Now, in terms—and I do submit that the ambiguity violates the due process. In terms of vague as applied, Your Honor, here, the jury was never instructed on which specific identifiers they had to find were unlawfully used. The lack of clarity definitely prejudiced Ms. McGonigal because different jurors could have convicted based on entirely different theories. The government, even in its argument, is not—that 1028A is not unconstitutionally vague, fails for a simple reason. The statute lacks clarity on what constitutes a means of identification. Even the government's own brief alternates between the means of identification as names, social security numbers, or undefined sensitive personal data. This inconsistency, Your Honor, highlights the statute's failure to provide fair notice of what conduct it criminalizes, leaving jurors to guess and inviting arbitrary enforcement. Now, Your Honor, for these reasons, I do submit, and the reasons written in our brief, that the statute is unconstitutionally vague, both on its face and as applied. And in some, Your Honor, the district court's in convicting, sentencing, and applying bond funds demand reversal. I respect the request that this Court vacate Ms. McGonigal's convictions and sentence and remand for further proceedings consistent with the law. Good morning, Your Honors, and may it please the Court, Colin Scott, on behalf of the United States. This Court should affirm the convictions and affirm the sentence. I want to start where my colleague on the other side of the aisle ended, which is the purported vagueness of 1028A. To start, this argument was waived before the district court under Federal Rule of Criminal Procedure 12b3. Any argument regarding the sufficiency of the indictment, whether it's failure to state a claim, needs to be brought before trial unless it's excused for good cause. And here, there's no argument, good or otherwise, for why Mr. McGonigal could not have brought the argument relying on Dubin before trial began in this case, which started in November of 2023. The Dubin concurrence was available in July of that year, so there was at least four or five months before trial started in which defense counsel could have brought a motion under 12b3 to dismiss this portion of the indictment. They failed to do so, so this Court should find the argument was waived. If the Court does not want to go to waiver, I think as my colleague on the other side of the aisle stated, the insurmountable hurdle in finding 1028 Big A to be unconstitutionally vague, as Judge Clifton pointed out, there's no basis for this Court to do that. Judge Gorsuch's lone concurrence was explicitly rebutted by a supermajority of the Supreme Court in that decision. There's no basis to find that the statute as a whole is unconstitutionally vague, or specifically, as Judge Bybee pointed out, as to this defendant as applied. This is clearly aggravated identity theft. The defendant stole thousands of identities, used them to file fraudulent tax returns, and then profited. This should be an easy issue for the Court. I want to now briefly address the issue of loss amount and the question that Judge Bybee raised of, do we get to take into account what he tried to do? And I think the answer has to be yes. The guidelines specifically allow this Court to consider, in looking at 1B1.3, which is the portion of the guidelines that kind of inform how district court judges are supposed to evaluate, calculate any offense level, specifically tells district courts to take into account all harms and all objects of the harm. And when reading that in conjunction with 2B1.1, it becomes clear that a reasonable interpretation of loss encompasses both actual and intended loss. So the government's contention here is that there was no error by the district court, let alone plain error, considering this Court's holdings in Hackett and also recently in Yoffa regarding the ambiguity of the term loss in light of Kaiser. There's no issue with the district court judge applying intended loss. Do you have any clarity on how many more, at least in your office, how many more of these cases are in the pipeline? Because the past year I've had under five or six, and every single time we've done an unpublished case saying, this is probably the, you know, given the 2024 amendment, this is it. But it keeps, you know, popping. They keep coming. Yeah, it's like, I don't know, like Brett Favre retiring, he's back again, back again. You think it's over, but it's not. I mean, it's, so I mean, I'm wondering, should we, you know, write an opinion on this? Because they just, you know, if you can just, if you have any clarity on how many more we have of these cases, because it's a difficult issue and we struggle over it and in the end we end up, you know, doing a very short unpublished opinion, memorandum thinking, this is it. Your Honor, I unfortunately can't provide a panel with clarity on how many more cases in the Central District of California involve this issue. I imagine that it truly is dwindling at this point, given that this is a sentencing from 2024, we're at the tail end, but I can't presume to tell the panel how many more are left. But regardless, to get to Judge Clifton's point, there is no prejudice. You have a very careful district court judge who issued a tentative sentencing memorandum, walked through each of the issues, and as the panel noted, said, regardless of whether I consider intended loss or actual loss, my sentence is going to be the same. Under a plain error review standard, there is no prejudice and there is no plain error for this court to reverse on. Are there no further questions? Well, your colleague points out that he has other arguments with regard to the reasonableness of the sentencing, and although I'm suddenly blanking on his name, there was the other person involved who got a much lower sentence, and he suggests that that demonstrates the unreasonableness of the sentence that was imposed, even if it was either below or within the guidelines, depending on how they're calculated. What's your response? Yes, Your Honor. So I think two points. One is that the issue with unwanted sentencing disparities has to do with national sentencing disparities regarding similar situations. But it comes up in the same case in the sense that you anticipate that people convicted as part of the same conspiracy probably wind up being treated the same way, with noted differences between the leaders and organizers and so forth. But is there an explanation for why the sentences are different here? Yes, Your Honor. So based on the record before the trial court, the two defendants, the co-defendants who testified against Defendant McGonigal at trial quickly accepted responsibility, worked with the government, testified at trial, fully accepted their role in the conspiracy, which the district court judge was presented with that sentencing, was minor. They took direction from the defendant, 20 years of tax experience and preparation. He told the co-defendants what to do. And so given their differing roles in the conspiracy, the stage at which they pled guilty and their role in accepting responsibility, I think the difference, the disparity between the sentences was warranted. You also have a defendant who took the stand and the district court judge's estimation lied. There was an obstruction of justice enhancement that was applied. So I think on that record, it's a refusal to really accept responsibility belays or underscores why the district court came out in sentencing the way it did, which was below both probation and the government's recommendation. And as Your Honor noted, a guideline sentence is presumptively reasonable. I think the same analysis applies for a below guideline sentence. So briefly moving on from loss, I do want to address the restitution issue that was before the court at the beginning of the hearing. My colleague on the other side of the aisle says that it's undisputed that the wife owned the money. I don't think that is quite accurate of a characterization of the disposition of the bond funds. As Judge Bybee pointed out, you know, the district court judge clearly recognized that if you sell a $1.2 million house and there are three participants, you're going to net more than $400,000 each between the three individuals. And so the question of, you know, was this $300,000, which defendant conveniently argued at the time of sentencing was from this house, was there enough money in that bond to be fully his, the answer is yes. But it was certainly not an abuse of discretion for the district court judge to rely upon the sworn statement by the defendant and his wife that the funds were his and to be returned to him at the conclusion of the proceedings. I think the most charitable view of my colleague's argument is that it was abuse of discretion to possibly not allow the defendant to speak again at the end of the hearing. But a careful reading of that transcript, defense counsel offers his client and he's available to speak if you want to hear from him. And Judge Selna in that moment says, no, I don't think I need to. Not that he wouldn't be allowed to speak. So I think there's a difference between refusing to allow him to present evidence, which he was allowed to do in the opposition to the government's motion to apply the bond to restitution versus what occurred here. A very careful district court judge who held a hearing, you know, made findings regarding who owned the funds and then properly applied it to restitution. Unless there are any other questions from the panel, I'm happy to yield back my time and would ask that for the reasons set forth in our brief, the government would ask that you affirm the convictions in the sentence. Great. Thank you. Thank you, Your Honors. Very briefly as relates to the application of the third party funds towards restitution. First and foremost, I don't need you to speak as a play way of saying no, Your Honors. Now, if they had allowed Mr. McGonigal to speak, then maybe the record would show whether or not there was a mortgage on the property or there's some other kind of lien or something else that would have not created a 400-400-400 split. However, that opportunity was not presented. All we know is that in the PSR, the pre-sentence report, Ms. Smith is identified as surety. We did not have the opportunity to clarify that for the court. And we do submit that it was an improper application, Your Honor, because we did not have the ability to clarify that. Now, if Your Honors have any other questions as it relates to the other claims, I do submit that internal disparities and external disparities are both looked at in terms of sentencing disparities. So as your question to the internal disparity amongst the defendants, I think that's an important point that we need to highlight. Now, Your Honor. If you've got a defendant who cooperates with the government, doesn't obstruct justice and testimony, can't that explain a differential sentence? Potentially, Your Honor. However, the large amount of funds at issue here, I think, leaves something to be guessed, leaves something to be wondered about. Additionally, we do submit that Mr. McGonigal did have a minor role, and I think the evidence does show that. Unfortunately, I am out of time, Your Honors, but I am open to any other questions you may have, but I do stand behind our arguments as raised in Appellant's brief and response. Thank you. Thank you both for your helpful arguments. The case has been submitted. And the final case we will hear today is United States v. Redbone.
judges: CLIFTON, BYBEE, LEE